# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MICHAEL DOEPKE,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　**Case No.  6:09-cv-1467-Orl-35KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits and Supplemental Security Income benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

### *I. BACKGROUND*

**A.**    **Procedural History**

Plaintiff filed for a period of disability[1], Disability Insurance Benefits and Supplemental Security Income benefits on April 11, 2005, alleging an onset of disability on March 12, 2005, due

---

[1] Plaintiff previously filed for a period of disability, Disability Insurance Benefits and Supplemental Security Income benefits in March 2002. R. 419. He was found not-disabled by an Administrative Law Judge ("ALJ") and the Appeals Council denied his request for review. R. 4. Plaintiff filed an appeal in federal district court, but that appeal was dismissed (by Judge Sharp) after his previous attorney failed to perfect service of process. R. 457-63.

to bipolar disorder, depression, and panic attacks. R. 437, 498-501, 504, 510. His application was denied initially and upon reconsideration. R. 471, 475. Plaintiff requested a hearing, which was held on August 7, 2007, before Administrative Law Judge Gerald Murray (hereinafter referred to as "ALJ"). R. 801-25. In a decision dated October 31, 2007, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 446. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 431. The Appeals Council denied Plaintiff's request on June 25, 2009. R. 428. Plaintiff filed this action for judicial review on August 26, 2009. Doc. No. 1.

### B.   Medical History and Findings Summary

Plaintiff was born on July 23, 1964 and was forty-three years old at the time of the ALJ's decision. R. 446, 498. He completed the twelfth grade, and he has worked in assembly, labor, and in a restaurant. R. 508, 513.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of bipolar disorder, depression, stress, and panic attacks. R. 504-05. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from bipolar disorder and a history of substance abuse, which were "severe" medically determinable impairments, but were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 439, 441. The ALJ determined that Plaintiff had no exertional limitations and was able to perform jobs at all exertional levels, however, due to perceived problems with concentration, the claimant was able to perform only unskilled or semi-skilled work. R. 442. In making this determination, the ALJ found that Plaintiff's allegations regarding his limitations were not entirely credible for the reasons set forth in the body of the decision. R. 444. Based upon Plaintiff's RFC, the ALJ determined that he could perform past relevant work as an assembler, deli worker, or general laborer. R. 445. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 446.

Plaintiff now asserts five points of error.  First, he argues that the ALJ erred by finding he had the RFC to perform unskilled or semi-skilled work at all exertional levels.  Second, he argues that the ALJ erred in evaluating his credibility.  Third, Plaintiff contends the ALJ erred by finding Plaintiff could perform his past relevant work.  Fourth, he asserts that the ALJ erred by improperly applying the SSA standards to his beer drinking.  For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995),( citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).  "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery*

*v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### III. ISSUES AND ANALYSIS

#### A. Residual Functional Capacity

Plaintiff claims that the ALJ should not have found him able to perform unskilled or semi-skilled work (R. 442) in light of Plaintiff's limitations in completing a normal workday and workweek. The Commissioner argues that substantial evidence supports the ALJ's decision because the ALJ appropriately limited Plaintiff to unskilled and semi-skilled work due to Plaintiff's perceived problems with concentration.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to

do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ must consider the findings of state-agency, non-examining physicians as expert opinion evidence. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). State agency medical and psychological consultants' opinions may be entitled to great weight if their opinions are supported by the evidence in the record. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); SSR 96-6p

Plaintiff argues the ALJ failed to include limitations in concentration, persistence and pace and his limitations in completing a normal workday or workweek in his residual functional capacity assessment of Plaintiff. R. 442-45. Plaintiff also contends that the ALJ erred in ignoring his testimony that he is unable to work full time, can only work part time, and cannot keep jobs because he cannot handle stress. R. 814, 817. Plaintiff testified that he can only pay attention for short periods of time (R. 526), and that his depression and bipolar disorder have an impact on his ability to concentrate to do a job. R. 818. Plaintiff argues that he has a long work history of interruptions that supports this evidence. R. 486-89. In addition, Plaintiff argues, the ALJ did not consider the state agency psychologists' opinions and did not state what weight he gave those opinions as required by Social Security Ruling 96-6p.

Plaintiff argues that two state agency non-reviewing physicians opined that Plaintiff had "significant" limitations in the ability to complete a normal workday and workweek, citing R. 596, 638. Plaintiff argues that because the reviewing psychologists chose "moderately limited" instead of "not significantly limited" with regard to his "ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," the psychologists "must have felt the impairment was 'significant.'" Doc. 13 at 6 n. 1. Plaintiff makes the same argument concerning the state agency psychologists' opinions regarding his limitations in the ability to carry out detailed

instructions and maintain attention, and concentration for extended periods, for which they opined he was "moderately limited." R. 595, 637.

The Commissioner points out that Plaintiff relies on the portion of the reviewing psychologists' forms, which does not address the functional capacity assessment. The portion Plaintiff relies on is contained in Part I of the RFC assessment form entitled "Summary Conclusions." R. 596-97, 637-38. However, it is Part III of the form which contains the state agency reviewing psychologists' Functional Capacity Assessment for Plaintiff. R. 597, 639. The Commissioner argues that the ALJ was not required to include any limitation on Plaintiff's ability to complete a workday or workweek because neither state agency psychologist opined that Plaintiff was limited in his ability to complete a normal workday or work week in the Functional Capacity Assessment contained in Part III of the form. The first psychologist, Dr. Weber, opined:

> Functional data shows:
>
> Understanding and Memory.
> Would [be] able to understand and remember simple instructions, but may have difficulties with more detailed instructions.
>
> Sustained Concentration and Persistence
> Would [be] able to complete simple tasks/work procedures and be able to make work decisions but may have difficulties with maintaining attention and concentration for extended period and may have some difficulties carrying out detailed instructions. . .
>
> Overall, capable of completing simple tasks on a regular basis from a mental standpoint. He attempted to work at a car wash and stopped due to physical problems He can cook, live alone, clean, shop, use money, socialize and follow directions.

R. 597. The second reviewing psychologist, Dr. Dearter, opined:

> Able to understand, remember, carry out routine instructions/procedures; make basic decisions; concentrate to complete things he starts.
>
> Able to go out on his own to visit mom or go to the store. Walks or rides bike as he does not drive due to seizures. Shops but mom manages his money.
>
> Able to cope with routine activities and changes.

> Overall – Despite credible evidence of mood D/O, [alcohol] abuse/dependence and dependent personality, [claimant] retains capacity to function mentally and socially to perform ADL and to interact with others.

R. 639.

Neither of the state agency psychologists indicated that Plaintiff was unable to complete a normal workday or workweek. Plaintiff singles out and emphasizes too heavily the reviewing psychologists' opinions that he was "moderately" limited in his Plaintiff's ability to complete the normal workday and workweek, as meaning that he would be "unable" to work full time or be frequently absent. R. 597, 639. This limitation was not substantial enough to be included by the psychologists as having an impact on their opinions of Plaintiff's overall functional capacity and the ALJ's failure to include it was not error.

Plaintiff argues that the ALJ's limitation of Plaintiff to unskilled or semi-skilled work does not adequately reflect Plaintiff's limitations because even unskilled and semi-skilled work requires concentration, persistence, and pace, citing *Vega v. Commissioner of Social Security*, 265 F.3d 1214, 1220 (11th Cir. 2001) (a concentration problem is one of the difficulties should have been included in the hypothetical question posed to the vocational expert). He argues that all work requires the abilities to concentrate on what the employee is being paid to do, to persist at some task, and to maintain a certain level of productivity or pace. However, the state agency psychologists indicated that Plaintiff was capable of understanding or carrying out simple or less detailed instructions and was capable of concentrating, though not for an extended period. As the Commissioner points out, these opinions were consistent with the medical evidence from examining sources – cited by the ALJ – that reported Plaintiff's ability to maintain attention and concentration was generally intact.

The ALJ's summary of the mental health evidence in the record was quite detailed:

A review of the treatment notes indicates the claimant's ongoing substance abuse has been the primary reason for mental health treatment.

>The medical record indicates [Plaintiff] was involuntarily sent to ACT Corporation in December 2003 for mental health treatment under the Baker Act after he made suicidal statements following the death of his friend. During an interview on December 11, 2003, [Plaintiff] admitted he had been having a problem with alcohol since he was 17 years old. Within the previous month, he had been drinking alcohol to the point where he had seizures when coming off alcohol. His alcohol abuse was associated with CUI convictions, disorderly conduct, assaults, and other difficulties. In January 2004, he was examined by the Halifax Medical Center Emergency Department after the police found him lying in the road, unable to stand or move. He asserted he had drunk two 30-ounce beers just before calling the police, and reported he intended to kill himself. On May 1, 2004, he was again evaluated under the Baker Act after he called police and reported he intended to kill himself. He stated he had become very depressed after learning his ex-wife had gotten remarried and had a child. Three days later, he was evaluated after drinking alcohol and self-inflicting an abrasion to his right wrist. On November 2, 2004, the claimant was taken to the hospital after reportedly having a seizure. [Plaintiff] stated that he believed the seizure was alcohol related. He admitted he had been drinking very heavily during the previous week because his father had died. He reportedly experienced a seizure after stopping. On April 14, 2005, he required some medical treatment after being assaulted the previous evening.
>
>On September 3, 2005, the claimant underwent psychological examination after he verbalized thoughts of suicide and exhibited ambivalence about accepting treatment. The examiner noted the claimant was having trouble accepting treatment recommendations because he was intoxicated. Testing revealed a blood alcohol level of 348 [*sic*]. During the interview, [Plaintiff] admitted to having histories of abusing alcohol, cocaine, and marijuana. Mental status examination revealed no significant deficits with the exception of intoxication-related impairments of judgment and insight. The staff diagnosed alcohol intoxication, alcohol abuse/dependence, and history of mood disorder. A GAF score of 71 to 80 was assessed. The examining psychologist noted [Plaintiff] exhibited no evidence of a thought disorder or a mental disorder. The claimant agreed to participate in an outpatient substance abuse program. Subsequent treatment records from ACT indicate [Plaintiff] has continued to have problems with alcohol abuse. On June 14, 2006, the claimant reported he was doing well on his current regimen. He was continuing to drink alcohol at times. He reported he was working as a day laborer between two to four days per week.

Dr. Oatley consultatively examined the claimant on September 22, 2004. During the interview, [Plaintiff] reported he was taking Trazodone, BuSpar, Lexapro, and Seroquel as prescribed by ACT. He admitted to several suicide attempts (by overdose and attempting to hang himself). With respect to activities of daily living, he reported he was able to prepare meals, bathe and dress himself, and perform all household chores including laundry. He stated he was able to complete routine household chores. He reported he enjoyed cooking and bowling. Mental status examination revealed appropriate dress, a clean appearance, appropriate attention span and activity level, and a cooperative and pleasant mood. The examiner noted the claimant was able to complete almost three hours of testing with only one short cigarette break. Memory testing revealed some weakness in working memory. Dr. Oatley diagnosed alcohol abuse and depressive disorder. He found no more than moderate limitations in the ability to respond to work pressures in a usual work setting.

-8-

> During the hearing, Neil Lewis, a medical expert, opined that if the claimant's history of alcohol abuse was taken out of the picture, the claimant would have no impairments severe enough to meet or equal a listing. He confirmed the medical record indicated the claimant has had ongoing problems with alcohol abuse as well as some depression. He stated the alcohol abuse is a substantial problem, and probably the most significant. He stated that at least one acute episode of depression reflected in the medical record was secondary to acute alcohol intoxication. The medical expert pointed out that the claimant's GAF scores have ranged from 30 to 80. He opined that if the claimant were to stop abusing alcohol, the claimant would have no significant problems meeting the minimum requirements of work. He further testified that if the claimant stopped abusing alcohol, he might continue to exhibit some residual depression that would more than minimally affect his ability to work ("severe" within the meaning of the Social Security Regulations). He testified that the medical record does not establish that the claimant's alleged bipolar disorder is substantially related to his history of drinking.

R. 440-41.

Dr. Oatley's examination reported that Plaintiff's attention span and activity level were appropriate; he showed some weakness in working memory which required reorganization of memory. R. 656-57. His MMPI reflected an individual who "self-presented as having much more severe problems than are actually experienced. . . . [A]ll clinical scales were elevated with schizophrenia exceeding 100. This self-presentation functioned to increase all clinical scales and was not so severe as to render the profile invalid. This profile pattern reflects someone who is tense, anxious, develops chronic aliments, has trouble sleeping, is depressed and obsessive, and lacks insight." R. 657. His prognosis (in September 2004) was "guarded, due to ongoing alcohol abuse," but he noted Plaintiff understood the value of money and could correctly compute simple mental purchases." R. 657.

In the RFC finding, the ALJ explained that he limited Plaintiff to unskilled and semi-skilled work due to Plaintiff's perceived problems with concentration. In his decision, the ALJ found:

> After careful consideration of the entire record, the undersigned finds the claimant has no exertional limitations; thus, the claimant is able to perform jobs at all exertional levels. However, due to perceived problems with concentration, the claimant is able to perform only unskilled or semi-skilled work.

R. 442, Finding No. 5. Just prior to discussing the RFC determination, the ALJ stated in addressing Plaintiff's impairments:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. In reaching this conclusion, the undersigned gives significant weight to the claimant's statements that his ability to concentrate is significantly impaired by his mental conditions. . . . In finding these degrees of limitation, the undersigned gives significant weight [to] the well supported DDS reviewer findings contained in Exhibits B-2f [Dr. Weber] and B-5f [Dr. Dearter].

R. 442. The ALJ considered and gave significant weight to the reviewing psychologists' opinions regarding limitations on Plaintiff's concentration, persistence, and pace. The ALJ then framed a hypothetical question to the VE, asking if Plaintiff's perceived moderate impairment in maintaining concentration, persistence, and pace would significantly impact his ability to perform unskilled and semi-skilled work; the VE confirmed it would not. R. 822. The ALJ then limited Plaintiff to unskilled and semiskilled work[2], which would not require him to perform complex tasks. R. 442. Accordingly, the ALJ's decision was based on substantial evidence.

### B.     Credibility

Plaintiff asserts that the ALJ erred in evaluating his credibility to the extent he is limited to unskilled and semi-skilled work in light of his testimony that he can only work part time (R. 814), and cannot keep jobs because he cannot handle stress (R. 817). Plaintiff again cites to the reviewing physicians' opinions of "moderate" limitations in completing the workday and workweek as "significant." He also cites his long work history and interruptions in support. R. 486-89. The Commissioner argues the ALJ's discrediting on Plaintiff's testimony was specific and based on the evidence.

---

[2] 20 C.F.R. §§ 404.1568(a), 416.968(a) (providing that unskilled work only involves understanding, remembering, and carrying out simple instructions; making simple work-related decisions; and dealing with changes in a routine work setting); 20 C.F.R. §§ 404.1568(b), 416.968(b) (providing that semi-skilled work does not "require doing the more complex work duties").

The ALJ is required to consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995); 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the symptoms alleged, the ALJ must apply the Eleventh Circuit's three-part "standard":

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptom.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain or other symptoms is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 443-44. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). The ALJ complied with these standards in that he determined that Plaintiff had a condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ articulated a reasonable basis for his determination. In that respect, immediately after discussing Plaintiff's RFC, the ALJ stated:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible.
>
> Though the medical evidence indicates the claimant is somewhat impaired, it does not show he is debilitated to the point of being unable to work. As already stated, the medical record indicates that most of the claimant's hospitalizations, treatments, legal difficulties, and other problems have largely arisen from his longtime history of substance abuse. Treatment notes do not convincingly show that the claimant would have any impairments severe enough to prevent him from sustaining employment if he remained abstinent from alcohol and other substances. The claimant testified that he has been working part-time as a kitchen worker. The medical record does not indicate he would be unable to work full-time as a kitchen worker if he chose to do so. Though the claimant would be expected to experience some residual depression when not abusing substances, the medical record does not indicate he would be expected to experience depression severe enough to prevent him from sustaining unskilled or semi-skilled work. Though the medical record does not indicate the claimant has been advised by mental practitioners to self-adjust his medication dosages during the daytime, he has apparently been able to function well enough to sustain part-time work while on less medication. Treatment notes do not indicate the claimant has reported undue medication side effects that adversely affect his ability to function. [Plaintiff] is generally in excellent physical condition. He has no particular problems with seeing, hearing, speaking, or smelling. His abilities to sit, stand, and walk are unlimited. His abilities to bend, kneel, crawl, crouch, and balance are unlimited. Though he has testified he is unable to work in hot environments, the objective medical record does not indicate he has a condition that renders him unable to do so. During the hearing, [Plaintiff] admitted he has no physical conditions or illnesses that affect his ability to work. All self-reported symptoms and limitations inconsistent with a residual functional capacity for unskilled semi-skilled work are not well supported by the weight of the evidence; thus, such self-reported symptoms and limitations are not generally credible.

R. 444-45.

Where an ALJ decides not to credit a claimant's subjective testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff argues the ALJ failed to cite specific reasons for questioning Plaintiff's testimony. Doc. 13 at 10. To the contrary, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints, including inconsistencies between Plaintiff's testimony and treatment records, as well as Plaintiff's complete lack of any physical limitations, his activities of daily living, his reported lack of medication side effects in the medical records, lack of evidence that he could not work in a hot environment, and his ability to work part-time. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. The ALJ noted that most of Plaintiff's problems resulted from his history of substance abuse (and most arose prior to the alleged onset date of March 2005), which had since been in remission, and his treatment notes did not show that he had a mental impairment severe enough to prevent him from working if he remained abstinent from alcohol and substance abuse. R. 444. The ALJ's reasons are supported by substantial evidence.

### C.     History of substance abuse

Plaintiff claims that the ALJ did not apply the correct legal standards to the issue of Plaintiff's alcohol abuse, which he argues was not a contributing factor to his disability. The Commissioner argues that the ALJ did not find that Plaintiff was disabled due to drug abuse or any other condition, merely noting Plaintiff's history of substance abuse.

In 1996, Congress amended the statutory definition of disability under the Social Security Act to preclude the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled. *See* Pub.L.No. 104-121 § 105; 42 U.S.C. § 423(d)(2). The regulations thereunder describe how to determine whether the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. According to the Regulations:

> (B)(1) The key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to the determination of

>>disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
>>(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we base our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
>>(I) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
>>(Ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 416.935(b). In this circuit, the claimant bears the burden of proving whether he would be disabled if he stopped using drugs and alcohol. *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001).

The ALJ found that "Though the claimant would be expected to experience some residual depression when not abusing substances, the medical record does not indicate he would be expected to experience depression severe enough to prevent him from sustaining unskilled or semi-skilled work." R. 445. Plaintiff characterizes the ALJ's finding as "these impairments and the limitations they cause would simply disappear if [Plaintiff] stopped drinking beer when he gets depressed." Doc. 13. Plaintiff argues that his substance abuse was not a contributing factor to his disability and the ALJ erred in failing to apply the correct standard to his independent mental impairments of depression and bipolar disorder. Plaintiff points to his testimony that his underlying depression causes him to drink alcohol (R. 815), and situational issues such as his father's death in 2004 and the news of his ex-wife's remarriage worsened his conditions and led to his drinking. R. 785, 791-96. He has been diagnosed with substance abuse caused by depression and increased substance use from relationship problems. R. 796. He has also been diagnosed with bipolar disorder, without any substance abuse diagnosis, and low GAF scores in the 40-50 range from ACT Corporation, even with substance abuse

-14-

in remission. R. 619-21, 623, 625, 682, 725, 731, 740, 797, 799. He argues that his drinking alcohol is not a contributing factor material to the determination of disability under the Social Security Regulations, but a by-product of his mental impairment, depression and bipolar disorder, which have been diagnosed during periods of sobriety and separate from any drinking problem.

The Commissioner argues that the ALJ properly considered Plaintiff's history of alcohol abuse in deciding his claim. Although the ALJ noted that most of Plaintiff's problems arose from his history of substance abuse, the ALJ did not find that he was not disabled due to substance abuse or any other condition. R. 439-46. The Court agrees that the ALJ's references to alcohol abuse were in the context of discussing Plaintiff's history of substance abuse and the credibility of his subjective complaints. R. 439-40, 444-45. The ALJ did not disqualify Plaintiff from benefits because of the alcohol abuse, and in fact recognized Plaintiff had recently become sober for several months, and that he would have residual depression even without the alcohol abuse although it would not be enough to prevent him from working. R. 445.

Plaintiff argues that the ALJ should not have relied on the opinion of Dr. Neil Lewis, the non-examining medical expert psychologist who testified at the hearing after reviewing Plaintiff's records. R. 804-08; R. 441. The Commissioner argues that the Plaintiff failed to show that his condition, even including his history of alcohol abuse, precluded him from performing unskilled or semi-skilled work at all exertional levels. R. 442 Finding 5. Other evidence in the record, from the consultative examination by Dr. Oatley in September 2004, during a time period when Plaintiff was abusing alcohol, revealed that he had appropriate attention span and activity level, and had a cooperative and pleasant mood. R. 440, 655-56. The Psychological Evaluation of Dr. Salter at ACT Corporation who assessed Plaintiff as part of an alleged suicide threat in September 2005, actually found no evidence of a mental disorder, impairment of the emotional processes, or other suicidal ideation. R. 617. Dr. Salter noted that Plaintiff had a serious alcohol/substance abuse problem; he was assessed with a GAF

of 71-80[3] at that time, and released for outpatient treatment. R. 617. Other treatment notes from ACT Corporation psychologists dated after Plaintiff's alleged onset date indicate he had intact attention, concentration and memory; coherent thoughts; and at least fair insight and judgment. R. 615, 619-22, 661, 667, 670, 672, 797-99). The ALJ's decision was based on his assessment of the ACT Corporation treatment notes, Dr. Lewis' opinion, and the opinions of the state agency psychologists (R. 440-41), and appropriately assessed Plaintiff with a bipolar disorder and a history of substance abuse. R. 439. The ALJ appropriately found that Plaintiff would experience some residual depression even if abstaining from alcohol. R. 445. The ALJ's decision was based on substantial evidence.

### D. Past Relevant Work

Plaintiff argues that the ALJ erred in finding that Plaintiff is able to perform his past relevant work as an assembler and general laborer because Plaintiff did not have "substantial gainful activity" in those positions, and the VE failed to consider his limitations in concentration, persistence and pace, and completing a normal workday and workweek. The Commissioner argues that the assembler and general laborer positions could constitute substantial gainful activity, even if part-time or not profitable, and alternatively, the deli worker position constituted substantial gainful activity.

The ALJ determined that Plaintiff was capable of performing his PRW as an assembler, a deli worker, and a general laborer (R. 445, Finding 6) and consequently found Plaintiff not disabled at the fourth step of the sequential evaluation. R. 445, Finding 6; 20 C.F.R. §§ 404.1520(f), 416.920(f). Work experience is relevant "when it was done within the last 15 years, lasted long enough for [the

---

[3] Plaintiff implies that GAF scores from 43 to 50, even when his substance abuse was in remission, are further indication he suffered from depression and bipolar disorder. Doc. 13 at 14; American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders, (4th ed. 2000) (DSM-IV) 34 (providing that a GAF score between 41 and 50 indicates "[s]erious symptoms" or "any serious impairment in social, occupational, or school functioning"). As the Commissioner points out, a GAF score, may have little or no bearing on the individual's work-related functioning. *See Ward v. Astrue*, No. 3:00-CV-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. 2008) ("an opinion concerning GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations."). Moreover, the ALJ did find that Plaintiff had a sever impairment of bipolar disorder and assessed his impairments appropriately.

claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. §§ 404.1565(a), 416.965(a). Plaintiff argues that he did not have "substantial gainful activity" as defined under the SSA regulations for two of the three positions, *i.e.*, earnings that average more than $780.00 in 2002, $800.00 in 2003, $810.00 in 2004, and $830.00 in 2005. *See* Doc. 13-1 (The Commissioner's Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity contained in his Program Operations Manual System at DI 10501.015). Plaintiff also contends that the VE's testimony about the assembler and general laborer jobs; he testified he was uncertain about "the vocational exhibit" because it "was fairly vague and sparse. . . it didn't say what, when, where, how, or anything. . . the DOT codes list hundreds, if not close to thousands of various assembler jobs. . . I guess. . . It did not indicate. . .it was just general labor various. . . if we are talking laborer or day laborer." R. 821. Plaintiff contends that a discussion of impairments then ensued, and exactly what job Plaintiff actually performed was "never resolved or defined." R. 821-24.

The Commissioner argues that, under the SSA regulations, the assembler and general laborer positions could constitute substantial gainful activity, even if done on a part-time basis or if a profit is not realized. 20 C.F.R. §§ 404,1572(a), 416.972(a). Alternatively, even assuming *arguendo* that Plaintiff is correct, the Commissioner argues that Plaintiff's past relevant work as a deli worker indisputably constitutes substantial gainful activity.

Plaintiff reported in SSA forms that he worked as a deli worker/cook on a full-time basis from 1990 to 2001, and the earnings records suggest that this work was substantial gainful activity. R. 485, 513-14, 530-31. Plaintiff reported in the SSA form - work history report that his deli worker/cook job involved assisting customers, cutting meats, and stocking products, and this work did not require technical knowledge or skills. R. 515, 532. Plaintiff also testified that he worked at Danny's, a meat market and catering company for approximately seven years, until he got divorced and relocated to

-17-

Florida. R. 812. The VE testified that, after reviewing the exhibits, consistent with Plaintiff's testimony and work history report, Plaintiff's past work involved a combination of deli cutter, slicer, and short order cook, which was unskilled to lower-level, semi-skilled work. R. 821.

Plaintiff argues, as to all three positions, that, in responding to the ALJ's hypothetical, the VE did not take into account Plaintiff's limitations in concentration, persistence and pace, and completing a normal workday and workweek. Plaintiff contends that the VE responded that moderate limitations in concentration, persistence or pace is "an impairment that may affect, but it certainly does not preclude the ability to function and sustain pace, persistence, and concentration." R. 822. Plaintiff mischaracterizes the VE's response by ignoring the ALJ's exact hypothetical, which did include a limitation of work that was either unskilled or semi-skilled, *i.e.*, with an SVP of 2 or 3. R. 822. The VE clarified his answer to say:

> For the work 40 hours and additionally it would have even less impact when we are talking simple one and two step repetitive unskilled, or lower level semi-skilled impairments.
> \* \* \*
> Certainly, skilled employment would require, would have a significantly greater impact if there is an impairment be it moderate or even mild when we are talking technical concentrations, and the judgments required to do the job as well as any additional training to obtain the skills necessary to do skilled work.

R. 822. The ALJ determined Plaintiff had the RFC to perform unskilled, to semi-skilled work at all exertional levels, and based on the VE's testimony, the ALJ appropriately concluded that Plaintiff could perform his past work as a deli worker. R. 445. Accordingly, the ALJ's decision is based on substantial evidence.

## *IV. CONCLUSION*

The ALJ carefully considered Plaintiff's circumstances in this case and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial

evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 6, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record